UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY SHAFFER, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>VANDERBILT COMMERCIAL<br>LENDING, INC., et al.,<br><br>　　　　　Defendants.<br>VANDERBILT COMMERCIAL<br>LENDING, INC., et al.,<br><br>　　　　　Counterclaim-Plaintiffs,<br><br>　v.<br><br>WAKE FOREST ACQUISITIONS, L.P.,<br><br>　　　　　Countercl.-Defendants. | No. 2:15-cv-2167 KJM DB<br><br>FINDINGS AND RECOMMENDATIONS |

Pending before the undersigned pursuant to Local Rule 302(c)(19) is plaintiffs' motion for default judgment, (ECF No. 79), as amended on July 17, 2018. (ECF No. 88.) Having reviewed plaintiffs' motion, and the documents filed in support, the undersigned recommends that plaintiffs' motion be granted for the reasons stated below.

1

**BACKGROUND**

Plaintiffs Wake Forest Acquisitions, L.P., Shaffer Asset Management Corporation, Robert P. Shafer, and Mary Shaffer, commenced this action through counsel on October 16, 2015, by filing a complaint and paying the required filing fee. (ECF No. 1.) On October 19, 2015, summons was issued as to defendants Gregory Cook and Vanderbilt Commercial Lending, Inc., ("VCL"), (ECF No. 2.) On December 16, 2015, the Clerk of the Court entered default as to defendants Cook and VCL. (ECF No. 12.)

However, on February 11, 2016, counsel for plaintiffs and counsel for defendants filed a stipulation and proposed order to set aside the entry of defendants' default. (ECF No. 20.) On April 18, 2016, the assigned District Judge entered an order vacating the Clerk's entry of default and ordering defendants to file a response to plaintiffs' complaint within 21 days. (ECF No. 23.) Defendants filed an answer on May 6, 2016. (ECF No. 24.)

On June 9, 2016, the parties appeared before the assigned District Judge for a Status (Pretrial Scheduling) Conference. (ECF No. 29.) However, on March 21, 2017, counsel for defendants filed a motion to withdraw. (ECF No. 37.) On July 6, 2017, the assigned District Judge issued an order granting defense counsel's motion to withdraw. (ECF No. 49.)

On December 27, 2017, the assigned District Judge issued an order granting plaintiffs leave to file an amended complaint. (ECF No. 68.) Plaintiffs filed a first amended complaint on January 9, 2018. (ECF No. 69.) Therein, plaintiffs allege, generally, that defendant VCL and defendant Cook (VCL's president) engaged in breach of contract and misrepresentation in failing to provide a commercial loan to fund plaintiffs' construction project. Plaintiffs had to obtain financing elsewhere and lost profits as a result. Based on these allegations, the amended complaint asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, breach of fiduciary duty, recession, violation of California's unfair competition law, and intentional misrepresentation. (Am. Compl. (ECF No. 69) at 35-55.[1])

////

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

Plaintiffs filed proof of service of the amended complaint on the defendants along with a request for entry of default on February 5, 2018. (ECF Nos. 73 & 73-1.) The Clerk entered defendants' default that same day. (ECF No. 74.) On April 25, 2018, plaintiffs filed the pending motion for default judgment. (ECF No. 79.)

Although a copy of plaintiffs' motion was served on the defendants, defendants did not respond to plaintiffs' motion or appear at a June 7, 2018 hearing regarding plaintiffs' motions.[2] (ECF Nos. 79-10 & 84.) On July 17, 2018, plaintiffs filed an amended motion for default judgment, which was also served on the defendants. (ECF No. 88-2.) Defendants nonetheless again failed to respond to plaintiffs' motion.

## LEGAL STANDARDS

**I. Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. Dundee, 722 F.2d at 1323. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The court is free to consider a variety of factors in exercising its discretion. Eitel v.

---

[2] A further hearing regarding plaintiffs' motion was set, however, the motion was taken under submission without further oral argument on August 6, 2018. (ECF Nos. 84 & 90.)

3

McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Among the factors that may be considered by the court are

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

## ANALYSIS

### I. Plaintiffs' Amended Motion for Default Judgment

#### A. The Eitel Factors Favor Entry of Default Judgment

Examining the amended complaint and plaintiffs' amended motion for default judgment in light of the Eitel factors, the undersigned finds that overall the Eitel factors weigh in favor of granting plaintiffs' amended motion for default judgment.

#### 1. Possibility of Prejudice to the Plaintiffs

The first Eitel factor contemplates the possibility of prejudice to the plaintiffs if a default judgment is not entered. Eitel, 782 F.2d at 1471. Prejudice may be shown where failure to enter a default judgment would leave plaintiffs without a proper remedy. Landstar Ranger, Inc. v. Parth Enterprises, Inc., 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (citing Pepsico, Inc. v. California Security Cans, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2010)).

Here, plaintiffs seek monetary damages for defendants' alleged wrongful conduct, which can only be obtained through a judgment. (Pls.' Am. MDJ (ECF No. 88-1) at 26.) Because defendants have refused to defend this action, if default judgment is not entered, plaintiffs would be left without a proper remedy. Accordingly, the first Eitel factor weighs in favor of granting default judgment on behalf of the plaintiff.

#### 2. Sufficiency of the Complaint and the Likelihood of Success on the Merits

The second and third Eitel factors are (1) the merits of plaintiffs' substantive claim, and (2) the sufficiency of the complaint. Eitel, 782 F.2d at 1471-72. The court considers the two

factors together given the close relationship between the two inquiries. <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F. Supp.2d 1039, 1055 (2010). These two factors will favor entry of default judgment where the complaint sufficiently states a claim for relief upon which the plaintiff may recover. <u>PepsiCo, Inc.</u>, 238 F. Supp.2d at 1175; <u>see</u> <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978).

As noted above, the amended complaint's alleged causes of action include claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and intentional misrepresentation. "A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." <u>CDF Firefighters v. Maldonado</u>, 158 Cal.App.4th 1226, 1239 (2008).

"In order to make a claim for breach of the implied covenant, the plaintiff must show that defendant 'fail[ed] or refuse[d] to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party.'" <u>Nasseri v. Wells Fargo Bank, N.A.</u>, 147 F. Supp.3d 937, 942 (N.D. Cal. 2015) (quoting <u>Careau & Co. v. Security Pacific Business Credit, Inc.</u>, 222 Cal.App.3d 1371, 1395 (1990)) (alterations in original).

"The four elements of promissory estoppel are: 1) a clear promise; 2) reasonable reliance; 3) substantial detriment; and 4) damages 'measured by the extent of the obligation assumed and not performed.'" <u>Errico v. Pacific Capital Bank, N.A.</u>, 753 F. Supp.2d 1034, 1048 (N.D. Cal. 2010) (quoting <u>Poway Royal Mobilehome Owners Ass'n. v. City of Poway</u>, 149 Cal.App.4th 1460, 1470 (2007)). And the elements of intentional misrepresentation are "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." <u>Alliance Mortg. Co. v. Rothwell</u>, 10 Cal.4th 1226, 1239 (Cal. 1995).

The amended complaint recounts at length plaintiffs' efforts in complying with defendants' demands, defendants' repeated promises to provide plaintiffs with financing

pursuant to the parties' agreement, defendants' requests for additional time to perform, and defendants' ultimate failure to perform resulting in considerable damage to the plaintiffs. In short, plaintiff Robert Shaffer and a business partner formed plaintiff Wake Forest Acquisitions, L.P., ("Wake Forest"). (Am. Compl. (ECF No. 69) at 2-4.) Plaintiff Robert P. Shaffer Revocable Trust—a trust held between plaintiff Robert Shaffer and his wife plaintiff Mary Shaffer—owned 74% of Wake Forest. (Id. at 4.) Plaintiff Shaffer Asset Management Corporation, ("SAM"), owned 1% of Wake Forest as a general partner. (Id.) Plaintiff Robert Shaffer's business partner owned the remaining 25% of Wake Forest. (Id.)

On July 6, 2011, defendant VCL sent plaintiff Wake Forest "a loan commitment . . . for a $14,060,000 loan at a floating interest rate of prime plus 375 basis points after the conversion date over a term of 60 months" to finance plaintiffs' student housing construction project. (Id. at 10.) On July 7, 2011, plaintiff Wake Forest accepted the loan commitment. (Id. at 11.) "[O]n July 12, 2011, Plaintiffs remitted a total of $82,500 to VCL" in connection with the loan commitment. (Id. at 12.)

Plaintiffs "complied with the extensive requirements set forth in the Loan Commitment." (Id. at 12.) And "spent . . . days intensively working to complete all of VCL's due diligence requirements." (Id. at 13.) On August 15, 2011, plaintiffs "remitted $2,300 to VCL for an environmental report on the Property, which was required under the terms of the Loan Commitment." (Id. at 14.) Despite plaintiffs' expenditure of efforts and resources, "the anticipated Loan closing date of September 1, 2011 came and went with no closing." (Id. at 14.)

On September 8, 2011, plaintiffs "remitted $6,000 to VCL for an appraisal of the Property, which was also required under the terms of the Loan Commitment." (Id.) On November 11, 2011, counsel for defendants circulated among the parties a closing memorandum. (Id. at 18.) The closing memorandum listed defendant VCL as the lender, plaintiff Wake Forest as the borrower, and recited a $14,060,000 construction loan from VCL to Wake Forest with no anticipated closing date. (Id.)

Between November 3, 2011 and November 18, 2011, plaintiffs paid defendant VCL $5,700 for engineering reports and insurance consultancy fees. (Id. at 19.) On December 5,

2011, VCL's attorney circulated incomplete drafts of loan related documents. (Id. at 20.) Those drafts included a promissory note, guaranty, pledge and security agreement, guaranty of completion, environmental indemnity, and deed of trust and security agreement and fixture filing and assignment of leases and rents. (Id. at 20-21.) "The closing date for the Loan was then set for December 12, 2011." (Id. at 21.) "The Loan did not close as scheduled on December 12, 2011." (Id. at 22.)

On December 19, 2011, a conference call was held in which plaintiffs Robert and Mary Shaffer and defendant Cook participated. (Id. at 23.) "During that conference call, [defendant] Cook indicated that VCL was prepared to close the Loan within ten business days of the first of the year – on or before January 14, 2012." (Id.) By the end of December 2011, plaintiffs "had remitted a total of $130,500 to VCL" and "had invested nearly $3.5 million into the construction of the Project" in reliance on VCL's loan commitment. (Id. at 23, 28.) The January 14, 2012 closing date "passed without the Loan closing[.]" (Id. at 24.)

Defendant "VCL has never produced the Loan—or any form of funding—to Wake Forest." (Id. at 28.) On February 15, 2012, defendant Cook and defendant VCL addressed a letter to plaintiff Shaffer, in which it is claimed that VCL presented Wake Forest with an offer of funding. (Id. at 28-29.) However, "Wake Forest never received any proposal[.]" (Id. at 29.)

During this process defendant VCL "was aware that [plaintiffs] Shaffer and the Trust were, combined, the vast majority owners in [plaintiff] Wake Forest and bore significant personal risk in connection with the" loan commitment. (Id. at 30.) Defendant VCL was also aware that plaintiffs "Shaffer, Sam, and the Trust were . . . relying upon VCL and were directly intended to benefit from the Loan and the Project." (Id.)

Absent the loan from VCL, plaintiffs "scrambled to obtain emergency financing for Wake Forest in order to keep the Project afloat." (Id. at 31.) In exchange for a $5 million funding guarantee, WFA Management, LLC, "assumed majority ownership interest in Wake Forest and the Project, which were previously held by [plaintiff] Shaffer through the Trust." (Id.) WFA Management, LLC also replaced plaintiff SAM as the general partner of Wake
////

7

Forest.  (Id.)  This resulted in plaintiff Shaffer's interest in Wake Forest being reduced from 89% to 27%.  (Id. at 32.)

"Upon completion, the Project was sold to a third-party bona fide purchaser for $27 million," yielding "$9 million in profit."  (Id.)  Plaintiff Robert Shaffer's 27% of that $9 million was $2,430,000.  (Id.)  Plaintiff SAM received nothing, having sold its 1% interest in Wake Forest.  (Id.)

Had defendant VCL "closed the Loan as it promised the Project would have had . . . profits of approximately $8 million."  (Id.)  "Of that $8 million in profits, [Robert] Shaffer, by and through the Trust, would have received 89%, or $7,120,000."  (Id.)  "Of that $8 million, SAM would have received 1%, or $80,000."  (Id.)  In this regard, "[a]s a result of VCL's failure to honor its obligations under the Loan Commitment, Shaffer, by and through the Trust, was damaged in the amount of $4,690,000 in documented lost profits."  (Id.)

Taking the well-pleaded factual allegations of the amended complaint as true, the undersigned finds that the factual allegations of the amended complaint are sufficient and that plaintiffs' claims appear meritorious.  See Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992) ("In reviewing a default judgment, this court must take the well-pleaded factual allegations of Cynthia's cross-complaint as true."); Joe Hand Promotions, Inc. v. Juarez, No. CIV S-10-920 LKK DAD (TEMP), 2011 WL 284503, at *3 (E.D. Cal. Jan. 26, 2011) (recommending grant of default judgment where "undersigned finds that the material allegations of the complaint support plaintiff's claims").

Accordingly, the undersigned finds that these two factors weigh in favor of granting default judgment.

### 3. Sum of Money at Stake

Under the fourth Eitel factor "the court must consider the amount of money at stake in relation to the seriousness of the defendant's conduct."  PepsiCo, Inc., 238 F.Supp.2d at 1176-77.  Where a large sum of money is at stake, this factor disfavors default judgment.  Eitel, 782 F. 2d. at 1472.  Here, the sum of money at stake is certainly large, as plaintiff is seeking $4,928,397.28

////

in damages. (Pl.'s MDJ. (ECF No. 88-1) at 26.) As such, the undersigned cannot find that this factor weighs in favor of granting default judgment.

### 4. Possibility of Disputed Material Facts

The fifth Eitel factor examines whether a dispute exists regarding material facts. Vogel v. Rite Aid Corp., 992 F. Supp. 998, 1012 (2014) (citing PepsiCo, 238 F. Supp. 2d. at 1177; Eitel, 782 F.2d. at 1471-72). Defendants, having previously appeared in this action, elected to forgo participation in these proceedings, and default was consequently entered against them. (ECF No. 74.) As a result of the default, all well-pleaded factual allegations made by plaintiffs are now taken as true. TeleVideo Systems, 826 F.2d at 917 (citing Geddes, 559 F.2d at 560). Thus, there is no possible dispute of material fact that would preclude the granting of a default judgment in plaintiffs' favor. Accordingly, this factor weighs in favor of granting default judgment.

### 5. Whether the Default Was Due to Excusable Neglect

The sixth Eitel factor contemplates whether defendants' default was due to excusable neglect. PepsiCo, 238 F.Supp.2d at 1177; Eitel, 782 F.2d at 1471-72. This factor gives consideration to due process, ensuring that defendants are "given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objections before a final judgment is rendered." Philip Morris USA, Inc. v. Castworld Productions, 219 F.R.D. 494, 500 (2003) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). Because defendants previously appeared in this action, their default cannot be due to excusable neglect.

As a result, this factor weighs in favor of granting default judgment.

### 6. Policy of Deciding Cases on the Merits

The seventh Eitel factor emphasizes the "general rule that default judgments are ordinarily disfavored." Eitel 782 F.2d at 1472. "Cases should be decided upon the merits whenever reasonably possible." Id. (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). However, defendants' refusal to further participate in this action has

////

rendered a decision on the merits impossible. Thus, this factor does not weigh against default judgment.

### B. Terms of Judgment

Having found that granting plaintiffs' motion for default judgment is appropriate, the undersigned must now address the issue of damages. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Here, plaintiffs' amended motion for default judgment seeks a total award of $4,928,397.28 in damages. (Pl's MDJ (ECF No. 88-1) at 24-26.) This amount is comprised on principal damages, prejudgment interest, and plaintiffs' costs. (Id.) For the reasons explained below, the undersigned will recommend that plaintiffs be awarded $4,770,000 in damages.

### A. Principal Damages

As explained above, had defendants performed as agreed, plaintiff Robert Shaffer, through plaintiff Trust, would have received $7,120,000 in profits instead of the $2,430,000 in profits he received—a loss of $4,690,000. (Pls.' MDJ (ECF No. 88-1) at 24.) And plaintiff SAM, which received nothing, would have received $80,000. (Id. at 24.) Plaintiffs' amended complaint explicitly sought these damages. (Am. Compl. (ECF No. 69) at 32.)

Accordingly, the undersigned finds that plaintiff is entitled to an award of $4,770,000 due to these damages. See generally Sargon Enterprises, Inc. v. University of Southern California, 55 Cal.4th 747, 773 (Cal. 2012) ("Lost profits may be recoverable as damages for breach of a contract."); Electronic Funds Solutions, LLC v. Murphy, 134 Cal.App.4th 1161, 1180 (2005) ("Damage awards in injury to business cases are based on net profits.").

### B. Prejudgment Interest

Plaintiffs' motion for default judgment also seeks $15,660 in prejudgment interest "on the $130,500 to be disgorged[.]"[3] (Pl.'s MDJ (ECF No. 88-1) at 25.) Plaintiffs' motion, however, does not direct the undersigned to where in the amended complaint plaintiffs sought

---

[3] Plaintiffs' motion also seeks post-judgment interest. (Pls.' Am. MDJ (ECF No. 88-1) at 25.) However, post-judgment interest is self-executing. In this regard, "once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed." Perkins v. Standard Oil Co. of California, 487 F.2d 672, 675 (9th Cir. 1973).

disgorgement or prejudgment interest. And the undersigned could not locate any such reference to disgorgement or prejudgment interest in the amended complaint.

Accordingly, the undersigned will not recommend that plaintiffs be awarded these damages. See Silge v. Merz, 510 F.3d 157, 160 (2nd Cir. 2007) ("Silge could easily have drafted a complaint that included a distinct claim for 'pre-judgment interest' in the demand clause. By operation of Rule 54(c), his failure to do so, intentional or not, ran the risk that his damages would be limited in the event of default."); Landstar Ranger, Inc. v. Parth Enterprises, Inc., 725 F.Supp.2d 916, 923 (C.D. Cal. 2010) ("Because plaintiff did not pray for such damages in the complaint, and no meaningful notice of the possibility that such amounts would be awarded has been given, plaintiff cannot recover prejudgment interest.").

**C.  Costs**

Plaintiffs' amended motion for default judgment also asserts that "[p]laintiffs have incurred costs in the amount of $12,237.28 arising from their prosecution of this suit." (Pls.' Am. MDJ (ECF No. 88-1) at 25.) "The award of costs to the prevailing party is not automatic . . . because the rule is qualified by the phrase 'unless the court otherwise directs.'" Moore v. National Ass'n of Securities Dealers, Inc., 762 F.2d 1093, 1107 (D.C. Cir. 1985).

Local Rule 292(b) provides:

> Within fourteen (14) days after entry of judgment or order under which costs may be claimed, the prevailing party may serve on all other parties and file a bill of costs conforming to 28 U.S.C. § 1924. The cost bill shall itemize the costs claimed and shall be supported by a memorandum of costs and an affidavit of counsel that the costs claimed are allowable by law, are correctly stated, and were necessarily incurred. Cost bill forms shall be available from the Clerk upon request or on the Court's website.

Here, plaintiffs have not complied with Local Rule 292. Accordingly, the undersigned will not recommend that plaintiffs be awarded costs. See Beats Electronics, LLC v. Deng, No. 2:14-cv-1077 JAM AC (TEMP), 2016 WL 335833, at *7 (E.D. Cal. 2016) (recommending denial of cost for failure to comply with Local Rule 292); Harley-Davidson Credit Corp. v. Chancellor Services, LLC, No. 2:14-cv-1703 MCE EFB, 2015 WL 5316603, at *6 (E.D. Cal. Sept. 10, 2015) (same).

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' April 25, 2018 motion for default judgment (ECF No. 79), amended on July 17, 2018 (ECF No. 88) be granted;

2. Judgment be entered against defendant Vanderbilt Commercial Lending, Inc., and defendant Gregory Cook;

3. Defendants' Vanderbilt Commercial Lending, Inc., and Gregory Cook be ordered to pay plaintiffs $4,770,000 in damages; and

4. This action be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after these findings and recommendations are filed, any party may file written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within 14 days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 26, 2018

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.civil\shaffer2167.mdj.f&rs

12